UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Stacy Coglianese, individually and on behalf of all others similarly situated,<br><br>                                Plaintiff,<br><br>- against -<br><br>Banana Republic, LLC,<br><br>                                Defendant | 1:21-cv-04959<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Banana Republic, LLC ("defendant") manufactures, labels, markets, and sells Authentic SUPIMA® V-Neck T-Shirts purporting to be "100% Supima Cotton" under the Banana Republic brand ("Product").

**I.    IDENTIFYING FIBERS**

2.    Clothing is required to accurately disclose fiber composition under the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. §§ 70, *et seq. See also* 16 C.F.R. Part 303.

3.    The main criteria to identify the type of cotton or other fiber is the fiber length.

4.    The length of cotton fibers affects its qualities and price – the longer the fiber, the stronger, softer, and more durable the resulting fabric.

5.    Pima cotton (*Gossypium barbadense L*) refers to extra-long staple ("ELS") cotton, which is between approximately 1.2 and 1.44 inches.[1]

6.    "Supima" – a combination of the words "Superior" and "Pima" – is the trademark

---

[1] ASTM International, D7641, Standard Guide for Textile Fibers.

used to promote and market textile products made with 100% American Pima cotton.

7. Supima cotton is grown in California, Arizona, Texas, and New Mexico.

8. Pima and Supima cotton products are costlier than shorter types of cotton.

9. This creates incentives for manufacturers to mix cotton byproducts and shorter fibers with higher value longer fibers, to gain additional profits at the expense of consumers.

10. However, the "Single-Fiber-Test" adopted by ASTM, a global standards body, can determine the length and length distribution of fibers used clothing.[2]

II. **THE PRODUCT CONTAINS LESS SUPIMA COTTON THAN PROMISED**

11. Plaintiff purchased an Authentic SUPIMA® V-Neck T-Shirt which was represented as consisting of 100% Supima Cotton, from defendant's website.



---

[2] D5103.

12. Laboratory analysis of the Product and/or substantially similar products was performed in accordance with the ASTM D5103 standard.

13. The results revealed that between most, and all fibers were shorter than 1.200 inches (30.48 mm) and shorter than 1.080 inches (27.432 mm), below the range for Supima cotton.

14. Even where an adjustment is made to the fiber lengths by assuming a twenty-five (25) percent reduction during the manufacturing, approximately seventy (70) percent of the fibers would fall under the Supima classification.

15. These results support the strong inference that the cotton used in the Product is not 100% Supima cotton and contains a significant amount of less expensive shorter cotton fibers and/or cotton byproduct fibers.

16. No reasonable consumer will expect that clothing advertised as containing "100% Supima Cotton" would contain significantly less Supima cotton than promised.

17. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing items like the Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

18. Whether a product contains all the Supima cotton it claims is basic information consumers rely on when making quick decisions at the store.

### III. CONCLUSION

19. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other

comparable products or alternatives.

20. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

21. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

22. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

23. The Product is sold for a price premium compared to other similar products, no less than $26.50, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

24. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

25. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

26. Plaintiff Stacy Coglianese is a citizen of Illinois.

27. Defendant Banana Republic, LLC is a Delaware limited liability company with a principal place of business in San Francisco, San Francisco County, California and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

28. Plaintiff and defendant's members are citizens of different states.

29. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

30. Venue is in the Eastern Division because plaintiff resides in Cook County, which is where the events giving rise to the present claims occurred.

## Parties

31. Plaintiff Stacy Coglianese is a citizen of Chicago, Cook County, Illinois.

32. Defendant Banana Republic, LLC, is a Delaware limited liability company with a principal place of business in San Francisco, California, San Francisco County.

33. Defendant is an American clothing and accessories retailer owned by the American multinational corporation Gap Inc.

34. The original concept behind the brand was the sale of items which had a safari theme.

35. Today, Banana Republic is an upscale clothing brand with over 500 stores in the United States and hundreds more around the world.

36. Defendant also sells its products through its website of the same name.

37. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at defendant's physical or online store, between January 2020 and February 2021, among other times.

38. Plaintiff bought the Product because she expected it would contain 100% Supima Cotton.

39. Plaintiff did not expect the Product to contain a significant percent less of Supima Cotton.

40. Plaintiff knew that Defendant was a high-quality brand, which would live up to its word.

41. Plaintiff bought the Product at or exceeding the above-referenced price.

42. Plaintiff relied on the representations identified here.

43. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

44. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

45. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

46. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

47. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[3]

48. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

49. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

50. Plaintiff is an adequate representative because her interests do not conflict with other

---

[3] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

members.

51. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

52. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

53. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

54. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

55. Plaintiff incorporates by reference all preceding paragraphs.

56. Plaintiff and class members desired to purchase a product that was 100% Supima Cotton and not a significant percentage less.

57. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

58. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

59. Plaintiff relied on the representations.

60. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

61. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

62. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

63. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

64. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

65. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was 100% Supima Cotton and not a significant percentage less.

66. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

67. This duty is based on Defendant's outsized role in the market for this type of Product.

68. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

69. Defendant received notice and should have been aware of these issues due to

8

complaints by regulators, competitors, and consumers, to its main offices.

70. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

71. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

72. Defendant had a duty to truthfully represent the Product, which it breached.

73. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians and owners of the Banana Republic brand, known for high quality goods.

74. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

75. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

76. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

77. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was 100% Supima Cotton and not a significant percentage less

78. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

79. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated:   September 17, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

                                                    60 Cuttermill Rd Ste 409  
                                                    Great Neck NY 11021  
                                                    Tel: (516) 268-7080  
                                                    spencer@spencersheehan.com